UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

      v.                                                                            **DECISION AND ORDER**

STANLEY OLEJNICZAK,                                             1:15-CR-00142 EAW

      Defendant.

---

## I.      INTRODUCTION

Pending before the Court is a motion filed by defendant Stanley Olejniczak (hereinafter "Defendant") for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Dkt. 1883). For the reasons set forth below, the motion is denied.

## II.     BACKGROUND

Defendant was one of 16 defendants[1] named in a 46-count Second Superseding Indictment (Dkt. 33) (hereinafter "Indictment") returned on March 16, 2016, alleging various crimes, including a RICO[2] conspiracy in violation of 18 U.S.C. § 1962(d), firearm offenses in violation of 18 U.S.C. § 924(c), Hobbs Act offenses in violation of 18 U.S.C.

---

[1]      An additional four defendants were named as part of the same RICO conspiracy in a separate indictment returned on October 4, 2017. Indictment, *United States v. Long*, No. 1:17-cr-00189-EAW-MJR, Dkt. 1 (W.D.N.Y. Oct. 4, 2017).

[2]      "RICO" refers to the Racketeer Influenced and Corrupt Organizations Act, codified at 18 U.S.C. §§ 1961-68.

§ 1951(a), and VICAR[3] counts, pertaining to the operation of the Kingsmen Motorcycle Club ("KMC").  Defendant was named in the following counts:

(1) Count 1 (RICO conspiracy) in violation of 18 U.S.C. § 1962(d);

(2) Count 2 (possession of firearms in furtherance of crime of violence) in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2;

(3) Count 10 (Hobbs Act Conspiracy) in violation of 18 U.S.C. § 1951(a);

(4) Count 11 (Hobbs Act Robbery) in violation of 18 U.S.C. §§ 1951(a) and 2;

(5) Count 12 (assault with a dangerous weapon in aid of racketeering) in violation of VICAR, 18 U.S.C. §§ 1959(a)(3) and 2;

(6) Count 13 (use of a firearm during and in relation to crimes of violence) in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2;

(7) Count 45 (using and maintaining the KMC South Buffalo Chapter's clubhouse for drug dealing) in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2; and

(8) Count 46 (possession of firearms in furtherance of drug trafficking) in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2.

(Dkt. 33).

Defendant was arrested and subsequently arraigned on March 22, 2016.  (Dkt. 34).  On March 29, 2016, a detention hearing was held before the magistrate judge, who issued an Order of Detention.  (Dkt. 69; Dkt. 70).  On July 26, 2016, Defendant filed a motion for reconsideration of the detention determination by the magistrate judge, claiming new information justified Defendant's release.  (Dkt. 229).  That motion was denied.  (Dkt.

---

[3]   "VICAR" refers to the Violent Crimes in Aid of Racketeering Activity statute, codified at 18 U.S.C. § 1959.

293). Then, on March 30, 2017, Defendant filed another motion before the magistrate judge seeking reconsideration of the detention determination. (Dkt. 549). That motion was also denied. (Dkt. 565).

Defendant ultimately sought review of the magistrate judge's detention determinations before the undersigned (Dkt. 574), and after briefing and oral argument, a Decision and Order was issued on August 2, 2017, wherein the Court concluded that the Government established by a preponderance of the evidence that Defendant presented a flight risk and by clear and convincing evidence that Defendant's release would endanger the safety of any other person and the community, and no condition or combination of conditions would reasonably protect against those risks. (Dkt. 707).[4]

On January 16, 2018, as jury selection was about to commence, Defendant entered into a plea agreement with the Government. (Dkt. 1002; Dkt. 1003). Defendant pleaded guilty to the RICO conspiracy charged in Count 1 of the Indictment, and the plea agreement contemplated an aggregate sentencing range of 84 to 105 months in prison. (Dkt. 1003 at ¶¶ 1, 12). As part of the plea agreement, Defendant admitted, among other facts, that he was part of the KMC, which constituted a criminal organization with unlawful objectives; that he possessed firearms and that the KMC was involved in drug trafficking activities;

---

[4]   Given the repeated determinations to detain Defendant pending trial and prior to any sentence, it is not clear why Defendant contends in his motion that this Court has recognized Defendant's preexisting medical and mental health conditions as "'extraordinary circumstances' in support of pre-sentence release and voluntary surrender." (Dkt. 1883 at ¶ 38).

and that on June 7, 2013, he was involved with other KMC members in the violent shutdown of the Springville KMC Chapter.  (*Id.* at ¶ 5).

On June 7, 2018, Defendant was sentenced to an aggregate prison sentence of 96 months, to be followed by three years supervised release.  (Dkt. 1296).  Defendant pursued an appeal before the Second Circuit Court of Appeals (Dkt. 1308), but the Second Circuit dismissed the appeal because of the appellate waiver in the plea agreement (Dkt. 1841). Defendant is presently serving his sentence at the Beaumont United States Penitentiary ("Beaumont USP") in Jefferson County, Texas, and he is due to be released on January 14, 2023.  *Find an Inmate*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited June 2, 2020).

On May 1, 2020, Defendant filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  (Dkt. 1883).  The basis for Defendant's motion is the national emergency and worldwide pandemic caused by the Coronavirus Disease-2019 ("COVID-19").[5]  Defendant contends that his preexisting medical conditions place him at greater risk under guidelines promulgated by the Centers for Disease Control and Prevention ("CDC") (*id.* at ¶¶ 23-26), that BOP is inadequately protecting its inmates (*id.* at ¶¶ 27-30), that his mental health conditions have been exacerbated by the crisis (*id.* at ¶ 38), and that while Defendant has filed a petition with the BOP for compassionate release, "BOP is likely

---

[5]     On March 13, 2020, the President declared a National Emergency concerning COVID-19.  Proclamation No. 9994, 85 Fed. Reg. 15337 (Mar. 13, 2020).  According to the World Health Organization's website, as of June 2, 2020, there were 6,140,934 confirmed cases of COVID-19 worldwide, with 373,548 confirmed deaths.  *See Coronavirus (COVID-19)*, World Health Org., https://covid19.who.int/ (last visited June 2, 2020).

- 4 -

incapable of reviewing routine modification[] applications because it is already overwhelmed responding to the crisis" (*id.* at ¶¶ 33-34).

The Government filed a response in opposition on May 7, 2020. (Dkt. 1888). In its response, the Government contends that the BOP has undertaken efforts to protect inmates from COVID-19, arguing that Beaumont USP "has zero (0) inmates infected with COVID-19." (*Id.* at 5-15 (emphasis omitted)). The Government opposes Defendant's motion on four grounds: (1) Defendant's motion is procedurally barred pursuant to 18 U.S.C. § 3582(c)(1)(A); (2) there is no extraordinary and compelling reason to release Defendant; (3) the factors set forth at 18 U.S.C. § 3553(a) require Defendant to complete his 96-month sentence; and (4) the Court lacks authority to order Defendant released to home confinement without reducing his sentence to time-served. (*Id.* at 18).

In response to Defendant's motion, the United States Probation Office ("USPO") submitted a memorandum dated May 8, 2020, which reported that although there is a "serious outbreak" of COVID-19 in some Texas facilities that has resulted in at least four deaths, there are no confirmed inmate cases of the disease at Beaumont USP. (Dkt. 1898). The memorandum also summarized a communication with Beaumont USP's complex warden stating that inmates have been supplied with masks which are regularly laundered, and that staff members periodically take inmate's temperatures. (*Id*. at 1). The USPO was unable to speak with medical personnel at Beaumont USP regarding Defendant's medical condition and care (*id*. at 2), but the Government has represented that a doctor reviewed Defendant's medical chart on May 1, 2020, concluding that his medical condition did not

qualify him for release (Dkt. 1888 at 3). The USPO states its opposition to Defendant's motion. (Dkt. 1898 at 2).

Because of the Government's objection on administrative exhaustion grounds, the Court issued an Order on May 12, 2020, concluding that on May 29, 2020, thirty days would have elapsed from the warden's receipt of Defendant's request for compassionate release (thus satisfying the terms of the statute), and allowing for the submission of any supplemental papers on or before May 28, 2020, after which date the matter would be submitted and taken under advisement. (Dkt. 1891). No further submissions were received from the parties, with the exception of a letter from the Government addressing its claim that the refusal to waive the administrative exhaustion requirement purportedly promotes a national uniform policy. (Dkt. 1892). Neither party has informed the Court of the results, if any, of Defendant's request for compassionate release made to the warden.

According to published BOP data, as of June 1, 2020, there are no confirmed positive COVID-19 cases at Beaumont USP (or at Beaumont FCI Medium or Beaumont FCI Low), and only a limited number of staff who have tested positive—at Beaumont USP one staff member has testified positive for the disease. *See COVID-19: Coronavirus*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited June 2, 2020).

### III.   LEGAL STANDARD AND ANALYSIS

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Gotti*, __ F. Supp. 3d __, No. 02 CR 743-07 (CM), 2020 WL 497987, at *1 (S.D.N.Y. Jan. 15, 2020). The compassionate release statute, as amended by the First Step Act, is such a statutory exception, and provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that . . . the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A). Relief is appropriate pursuant to § 3582(c)(1)(A) when the following conditions are met: (1) the exhaustion requirement of the statute is satisfied; (2) the factors set forth at 18 U.S.C. § 3553(a) support modification of the prison term; (3) extraordinary and compelling reasons warrant a reduction of the prison sentence; and (4) the reduction in the prison sentence is consistent with the Sentencing Commission's policy statements.

Both Defendant and the Government appear to agree that Defendant, through his counsel, submitted a request for compassionate release to the warden of Beaumont USP on April 29, 2020, and the request was received on that date. (Dkt. 1883-2; Dkt. 1888 at 2). Therefore, the 30 days has now expired, and the Court may consider the motion. *See United States v. Wen*, __ F. Supp. 3d __, No. 6:17-CR-06173 EAW, 2020 WL 1845104, at *4-5 (W.D.N.Y. Apr. 13, 2020) (as a claim-processing rule, § 3582(c)(1)(A)'s exhaustion requirement is non-jurisdictional and thus subject to the doctrines of waiver and equitable estoppel).

With respect to the requisite showing of extraordinary and compelling reasons justifying a sentence reduction, Defendant argues that his sentence should be reduced because of the COVID-19 pandemic and his preexisting medical conditions that purportedly place him at an increased risk of becoming seriously ill from the virus. (Dkt. 1883 at ¶¶ 4-5). Specifically, Defendant cites to his history of depression, pulmonary embolism, colon cancer, hypertension and heart issues, thyroid nodules and obesity, as contributing to his increased risk from COVID-19. (*Id*. at ¶ 6). In contrast to the medical and mental health history portrayed by Defendant, the Government contends that it has reviewed Defendant's medical records from the BOP, he has no current diagnoses of serious illness, and his most recent hospitalization involved nonbleeding hemorrhoids. (Dkt. 1888 at 2-4).

Even if the Court were to agree with Defendant that he has certain preexisting medical conditions that place him at an increased risk for serious illness from COVID-19, *see Frequently Asked Questions: Higher Risk*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/faq.html#Higher-Risk (last visited June 2, 2020), that in and of itself is not sufficient to establish extraordinary and compelling reasons to justify a reduction in Defendant's sentence. There are no identified cases of COVID-19 among the inmate population where Defendant is housed. The Court recognizes that prison settings present unique challenges in preventing the spread of any infectious disease, *see generally Brown v. Plata*, 563 U.S. 493, 519-20 (2011) (describing overcrowded California prison system as "breeding grounds for disease"), and those challenges appear particularly acute when dealing with COVID-19. Indeed, the BOP has

faced well-documented challenges in stopping the spread of COVID-19 within certain of its facilities. *See, e.g.*, *Martinez-Brooks v. Easter*, No. 3:20-cv-00569 (MPS), 2020 WL 2405350, at *20-22 (D. Conn. May 12, 2020) (finding likelihood of success on Eighth Amendment claims based on conditions at FCI Danbury, where there was an active and serious outbreak of COVID-19, social distancing was not practical, and warden failed to consider transfers of medically vulnerable inmates in any meaningful way); *Wilson v. Williams*, __ F. Supp. 3d __, 2020 WL 1940882, at *2 (N.D. Ohio Apr. 22, 2020), *appeal filed*, No. 20-3447, 2020 WL 2120814 (6th Cir. Apr. 27, 2020) (outlining the ineffectiveness of the various procedures and protocols being implemented at FCI Elkton). However, the steps undertaken by the BOP at Beaumont USP appear, at least at this time, to have been successful in stopping the spread of the virus. Based on the record before the Court, Defendant has failed to establish extraordinary and compelling reasons for a reduction in his sentence.

Furthermore, even if Defendant could establish extraordinary and compelling reasons, the Court further concludes that Defendant's motion must be denied because he presents a risk of danger if released and the § 3553(a) factors warrant against a sentence reduction. The Sentencing Commission's relevant policy statement pertinent to motions under § 3582(c)(1)(A) is contained at U.S.S.G. § 1B1.13, and among other factors requires that a motion for a reduction in a prison sentence should only be granted where the Court determines that a "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." A defendant's dangerousness must also

be considered as part of a court's consideration of the factors set forth at 18 U.S.C. § 3553(a).

Defendant is 55 years old, and has a long criminal history involving violent and threatening conduct, and failure to comply with court orders, dating back to the age of 17 (Dkt. 1268 at ¶¶ 65-72), resulting in a Criminal History Category of IV (Dkt. 1454 at 1). In fact, Defendant was under a criminal justice sentence when he committed the instant offense. (Dkt. 1268 at ¶ 74). Moreover, his underlying offense conduct involved a dangerous motorcycle club, drug trafficking and possession of firearms, and violent activities inflicted as part of the KMC mode of operation, all of which necessitate a finding that Defendant should not be released from prison. Indeed, these considerations led the Court to conclude that Defendant should be detained pending trial, and contributed to the Court's conclusion that a 96-month prison sentence was necessary in view of the § 3553(a) factors. The COVID-19 pandemic and Defendant's potential increased risk from the disease in a prison sentencing, do not change the Court's assessment.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) (Dkt. 1883) is denied.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated:    June 2, 2020
          Rochester, New York